**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| JOHN MENDEZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:18-cv-00026-O-BP |
| | § | |
| WELLS FARGO BANK, N.A., | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court is Defendant Wells Fargo Bank, N.A.'s Motion for Summary Judgment (ECF No. 11) with Brief and Appendix in Support (ECF Nos. 12–13) filed September 21, 2018. Pursuant to Special Order No. 3-251, the case was referred to the undersigned for pretrial management, including the determination of non-dispositive motions and issuance of findings of fact and recommendations on dispositive motions. (*See* ECF No. 3). After considering the pleadings of the parties, the summary judgment evidence, and applicable law, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **GRANT** Defendant's Motion for Summary Judgment (ECF No. 11) and **DISMISS** Plaintiff's complaint **with prejudice**.

**BACKGROUND**

Plaintiff John Mendez ("Mendez") sued Defendant Wells Fargo Bank, N.A. ("Wells Fargo") in his original state court petition for damages allegedly resulting from a violation of the Texas Debt Collection Act ("TDCA"). (ECF No. 1-5). He also requested injunctive relief to prevent Wells Fargo's foreclosure concerning Mendez's property located at 5903 Ivy Glen Drive, Grand Prairie, Texas 75052 (the "Property"). (*Id.*). On July 11, 2018, Wells Fargo removed the case to this Court on the basis of diversity jurisdiction. (ECF No. 1).

Mendez initially purchased the Property in September 2011. (ECF No. 1-5 at 3). In connection with the purchase, Mendez executed a note in the principal amount of $138,950.00 made payable to Primelending, a PlainsCapital Company, with an endorsement to Wells Fargo. (ECF No. 13 at 15). Mendez and his wife both signed a deed of trust that granted a security interest in the Property to secure repayment of the note. (*Id.* at 35).

Mendez's complaint alleges that Wells Fargo used an escrow scheme to improperly increase his monthly mortgage payment. (ECF No. 1-5 at 3). He claims that Wells Fargo advised him in March 2013 that his monthly payment would increase from $877.47 to $1,258.31 because of an escrow shortage of $6,655.22. (*Id.*). He alleges further that Wells Fargo, without explanation, increased his monthly payment again in May 2014, May 2015, and April 2016. (*Id.*). In May 2017, he asked Wells Fargo to provide an accounting of his loan and an explanation for the increases. (*Id.*). Then, he notified Wells Fargo that he could no longer afford to make payments on the loan and requested a loan modification. (*Id.*). He claims Wells Fargo's refusal of his loan modification request forced him to file for bankruptcy protection. (*Id.*). However, five months after he allegedly filed for bankruptcy protection, Mendez claims he was "released" from bankruptcy and received a loan modification trial payment plan in October 2017 with trial payments of $1,398.26. (*Id.*). He made one payment toward the trial payment plan before Wells Fargo notified him that his payment would increase, yet again, to $1,7170.70 (*Id.* at 4). Mendez claims that Wells Fargo's actions violated the TDCA.

Wells Fargo filed its motion for summary judgment and supporting evidence in an appendix on September 21, 2018. (*See* ECF No. 13). The appendix contains the declaration of Brandon McNeal, Vice President of Loan Documentation, which authenticates and explains the note, deed of trust, several escrow disclosure statements, Mendez's payment history on the note,

notice of default, and trial payment plan approval letter. (*Id.* at 5–9). The appendix also contains the declaration of Sahar H. Shirazi, counsel for Wells Fargo, which supports Wells Fargo's contention that Mendez was properly served with its First Set of Requests for Admission, Interrogatories, and Requests for Production of Documents, but failed to respond. (*Id.* at 163–64). Although the Court ordered Mendez to file any response to the motion by October 12, 2018, Mendez has not filed a response. The motion is now ripe for decision.

## LEGAL STANDARD

Summary judgment is appropriate when, viewing the evidence and all justifiable inferences in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Hunt v. Cromartie*, 526 U.S. 541, 549 (1999). The appropriate inquiry for the Court to make is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 251–52 (1986).

The party moving for summary judgment has the initial burden to prove there is no genuine issue of material fact for trial. *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001). To meet this burden, the movant must identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

Once the moving party makes a properly supported motion for summary judgment, the nonmoving party must look beyond the pleadings and designate specific facts in the record to show that there is a genuine issue for trial. *Stults v. Conoco, Inc*., 76 F.3d 651, 655 (5th Cir. 1996). The

nonmovant "may not rest upon mere allegations contained in the pleadings, but must set forth and support by summary judgment evidence specific facts showing the existence of a genuine issue for trial." *Ragas v. Tennessee Gas Pipeline Co*., 136 F.3d 455, 458 (5th Cir. 1998) (citing *Anderson*, 477 U.S. at 255–57). Citations to evidence must be specific, and "a party must support each assertion by citing each relevant page of its own or the opposing party's appendix." Local Civil Rules of the Northern District of Texas 56.5(c).

Mendez's failure to respond to Wells Fargo's motion for summary judgment does not permit the Court to enter a "default" summary judgment. *Settlement Capital Corp., Inc. v. Pagan*, 649 F. Supp. 2d 545, 553 (N.D. Tex. 2009). Instead, the Court is permitted to accept Wells Fargo's evidence as undisputed. *Eversley v. MBank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988). Normally, "[a] summary judgment nonmovant who does not respond to the motion is relegated to [his] unsworn pleadings, which do not constitute summary judgment evidence." *Bookman v. Schubzda*, 945 F. Supp. 999, 1002 (N.D. Tex. 1996) (citing *Solo Serve Corp. v. Westowne Assocs.*, 929 F.2d 160, 165 (5th Cir. 1991)). But attached to Mendez's original petition is a signed verification under penalty of perjury stating that the "statements made in the . . . Original Petition are within his personal knowledge true and correct [sic]." (ECF No. 1-5 at 9). Accordingly, the factual allegations made in Mendez's verified petition "may be treated the same as when they are contained in an affidavit." *Hart v. Hairston*, 343 F.3d 762, 765 (5th Cir. 2003) (per curiam).

## ANALYSIS

I.    **Plaintiff has not designated specific facts in the record to show that there is a genuine issue for trial on his TDCA claim.**

To state a claim under the TDCA, Mendez must show: (1) the debt is a consumer debt; (2) Wells Fargo is a debt collector within the meaning of the TDCA; (3) Wells Fargo committed a wrongful act in violation of the TDCA; (4) the wrongful act was committed against Mendez; and

(5) Mendez was injured as result of Wells Fargo's wrongful act. *Sgroe v. Wells Fargo Bank, N.A.*, 941 F. Supp. 2d 731, 743 (E.D. Tex. 2013). Mendez alleges that (1) he is the mortgagor of the Property "as defined by the Texas Code Section 51.001(5) (6)"; (2) Wells Fargo is engaged in the business of collecting consumer debts in the state of Texas; (3) Wells Fargo is a debt collector as "defined by the Texas Finance Code Section 51.001(5) (6)"; and Wells Fargo's course of conduct violated the TDCA. (ECF No. 1-5 at 4). From Mendez's petition, the course of conduct he complains of is Wells Fargo's yearly increases to his monthly payment; the monthly payment discrepancy between the November 2017 escrow disclosure and the trial payment plan; and Wells Fargo's alleged refusal to modify his loan that allegedly forced him to seek bankruptcy protection. (*Id.* at 3–4).

There is no evidence to support the assertion that Wells Fargo improperly increased the escrow portion of Mendez's monthly payment. The summary judgment evidence proves that the deed of trust, signed by Mendez and his wife, calls for them to pay when due "principal," "interest," and "Escrow Items pursuant to Section 3." (ECF No. 13 at 23). Further, Section 4 provides that Mendez "shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property" and shall pay them in accordance with Section 3 of the deed of trust. (*Id.* at 25). Section 3 defines, in part, "Escrow Items" as "(a) taxes and assessments . . . which can attain priority . . . as a lien or encumbrance on the Property," "(c) premiums for any and all insurance," and "(d) Mortgage Insurance premiums . . . ." (*Id.*). Section 3 also provides that Wells Fargo "shall estimate the amount of [escrow] Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law." (*Id.*). Section 9 further provides that Wells Fargo may protect its interest in the Property by "paying any sums secured by a lien which has priority over" the deed of trust. (*Id.* at 27).

Thus, Wells Fargo has established that it could pay escrow funds, including property taxes, to protect its interest in the Property if Mendez failed to do so. Wells Fargo also sent escrow disclosure statements to Mendez showing the amount of escrow funds due, (i*d.* at 43–77), property taxes assessed in tax years 2011–2017 that it paid, (*id.* at 6–7), and that the escrow portion of Mendez's monthly payment increased due to rising property taxes or insurance, (*id.* at 7). Mendez has submitted no controverting summary judgment evidence. Thus, there is no summary judgment evidence to establish that Wells Fargo's conduct was anything other than in accordance with the deed of trust. Accordingly, Mendez has not shown that there exists a triable issue of fact on the TDCA claim.

Mendez's other claims also lack merit. Mendez alleges that in October 2017 he received a loan modification trial payment plan from Wells Fargo that provided for a monthly payment of $1,398.26. (ECF No. 1-5 at 3–4). In the following month, he received an escrow disclosure statement advising him that his monthly payment would increase to $1,717.70. (*Id.*). It further stated that if he failed to make the new monthly payment, Wells Fargo would foreclose on the Property. (*Id.*). To the extent Mendez asserts that the escrow statement constituted a threat of foreclosure, the "TDCA does not prevent a debt collector from 'exercising or threatening to exercise a statutory or contractual right of seizure, repossession, or sale that does not require court proceedings." *Johnson v. Wells Fargo Bank, NA*, 999 F. Supp. 2d 919, 933 (N.D. Tex. 2014) (quoting Tex. Fin. Code Ann. § 392.301(b)(3)). "Foreclosure is not an action prohibited by law." *Sgroe*, 941 F. Supp. 2d at 744. Because the summary judgment evidence proves that Wells Fargo had a right under the deed of trust to adjust Mendez's monthly payment for increases in property tax assessments and to institute foreclosure proceedings when monthly payments were missed,

Wells Fargo did not violate the TDCA when it exercised those rights. (*See* ECF No. 13 at 33–34 (Section 22. Acceleration; Remedies)).

Mendez also claims that Wells Fargo forced him into bankruptcy because it "refused to make any adjustments to the loan payment through bankruptcy." (ECF No. 1-5 at 19). But, as discussed above, Wells Fargo had a right to foreclose on the Property, and Mendez has provided no summary judgment evidence to establish that Wells Fargo made any specific threats, prohibited actions, or false and deceptive statements that violated the TDCA. Nor did he present any evidence that Wells Fargo interfered with the bankruptcy proceedings.

Further, Mendez's claims do not show that Wells Fargo misrepresented the character, extent, or amount of the loan. Tex. Fin. Code Ann. § 392.304(a)(8) (West 2016). To violate the TDCA, Wells Fargo must have made an affirmative statement that was false or misleading. *Kruse v. Bank of New York Mellon*, 936 F. Supp. 2d 790, 792 (N.D. Tex. 2013). The November 2017 escrow disclosure statement of which Mendez complains states that his monthly payment would increase to $1,717.70 on January 1, 2018, due to an escrow shortage. (*Id.* at 156). But it also states that "[y]ou may find the monthly payment amount shown on this statement is not the same as your trial plan payment. Please make your payments as outlined in your trial payment plan." (*Id.*). Mendez's Trial Payment Plan Approval Letter also states that "[a]ny difference between the amount of the Trial Period Plan payments and your regular mortgage payments will be added to the balance of your loan along with any other past due amounts as permitted by your loan documents." (*Id.* at 152). The letter further states that "[y]our current loan documents remain in effect; however, you may make the Trial Period Plan payment instead of the payment required under your loan documents[.]" (*Id.* at 153). Thus, the summary judgment evidence proves that Mendez could continue making the trial payment plan amount instead of the amount listed on the

7

November 2017 escrow statement. Further, Mendez has not shown how the escrow balance was misrepresented. Accordingly, Mendez has failed to provide any summary evidence to establish that Wells Fargo improperly increased his monthly payment under the trial payment plan or that the November escrow disclosure statement included any misleading representations about the character, extent, or amount of the escrow shortage.

Wells Fargo also argues that Mendez has submitted no evidence that he was damaged as a result of any allegedly wrongful conduct by Wells Fargo. Mendez's petition asks the Court to award damages arising out of Wells Fargo's "wrongful and unlawful foreclosure and sale and attorneys [sic] fees." (ECF No. 1-5 at 7). But Mendez has provided no evidence of any damages under the TDCA. His petition does not allege any actual damages. Further, the summary judgment evidence proves that the Property was not foreclosed upon. (ECF No. 13 at 8). Moreover, the TDCA does not allow recovery of statutory damages without evidence of actual damages. Tex. Fin. Code Ann. § 392. 403(a)(2). And, finally, Mendez is proceeding *pro se* and has no attorney's fees that are subject to recovery. Accordingly, Mendez has failed to show there is a triable issue of fact related to damages.

Because Mendez has failed to present any specific evidence in the record to show that there is a genuine issue for trial on his TDCA claim, Wells Fargo's motion for summary judgment should be granted.

**II.    Plaintiff's request for injunctive relief should be dismissed with the underlying cause of action.**

"[A]n injunction is a remedy that must be supported by an underlying cause of action . . . ." *Crook v. Galaviz*, 616 F. App'x 747, 753 (5th Cir. 2015) (per curiam). The undersigned's recommendation that Wells Fargo's Motion be granted and Mendez's complaint dismissed with

8

prejudice also should result in dismissal of his claim for injunctive relief. Accordingly, Mendez's claim for injunctive relief should be denied.

## CONCLUSION

For these reasons, the undersigned **RECOMMENDS** that Judge O'Connor **GRANT** Defendant's Motion for Summary Judgment (ECF No. 11) and **DISMISS** Plaintiff's complaint **with prejudice**.

A copy of this Findings, Conclusions, and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Findings, Conclusions, and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b)(1). In order to be specific, an objection must identify the specific finding or recommendation to which the objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

Signed February 5, 2019.

_____
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE

9